UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| BRIAN CUMMINGS, | ) |
| Plaintiff, | ) ) |
| | ) NO. 3:22-cv-00301 |
| v. | ) ) |
| BRETTON KEEFER, on behalf of the deceased, CHESTA SHOEMAKER, AFSOON HAGH, and JEANNE BURTON, Trustee on behalf of CUMMINGS MANOOKIAN, PLC, | ) ) ) ) ) ) |
| Defendants. | ) |

## AMENDED COMPLAINT

The Plaintiff, for this cause of action, respectfully states to the Court and trier of fact as follows:

### PARTIES, VENUE, AND JURISDICTION

1. The Plaintiff, Brian Cummings ("Mr. Cummings"), is an adult resident of Tennessee.

2. The majority of legal work performed by Mr. Cummings on behalf of his former client, and a Defendant in this action, Bretton Keefer, on behalf of the deceased, Chesta Shoemaker, was performed in Davidson County, Tennessee.

3. The Defendant in this action, Bretton Keefer ("Mr. Keefer"), on behalf of the deceased, Chesta Shoemaker, received the benefit of Mr. Cummings' time, legal work, and financial funding of his previously-filed and now resolved health care liability, wrongful death

lawsuit that bore docket number 19C358 in the Davidson County, Tennessee Circuit Courts ("the Keefer matter"). The original Complaint in the Keefer matter was prepared and filed in February 2019, by Mr. Cummings, who was, at that time, a partner in Cummings Manookian, PLC ("Cummings Manookian"), a law firm based in Davidson County, Tennessee.

4. Afsoon Hagh ("Ms. Hagh") was one of the attorneys who did work on behalf of Mr. Keefer in the Keefer matter, and she did some of her attorney work on this matter in Davidson County, Tennessee.

5. Mr. Cummings voluntarily withdrew from Cummings Manookian in 2018, leaving Brian Manookian ("Mr. Manookian") as the only remaining Member of Cummings Manookian. The financial situation of Cummings Manookian changed after Mr. Cummings' withdrawal from the firm to the extent that Mr. Manookian put Cummings Manookian into bankruptcy proceedings.

6. Jeanne Burton is the Trustee for Cummings Manookian in those bankruptcy proceedings.

7. Attorney work was done on the Keefer matter by Brian Cummings while he was still a Member at Cummings Manookian, but that work was a very small percentage of the overall time and work performed by Mr. Cummings on the Keefer matter.

8. The original Complaint filed in the Keefer matter by Mr. Cummings in February 2019, listed Ms. Hagh as co-counsel with Mr. Cummings for Mr. Keefer. That Complaint properly identified Mr. Cummings as being with his new firm, Cummings Law, and that Complaint properly identified Ms. Hagh as being with her firm at that time, Cummings Manookian.

9. Jeanne Burton, as Trustee in bankruptcy for Cummings Manookian, is a proper party to this matter because some portion of the attorney work done related to the attorney's lien issue was performed by at least one attorney while such an attorney was still a part of Cummings Manookian and because the monetary value of the attorney work by any attorneys who at the time of that work were a part of Cummings Manookian makes that monetary amount a concern / asset of the Cummings Manookian bankruptcy proceeding.

10. Venue and jurisdiction are appropriate with the Circuit Courts of Davidson County, Tennessee.

## FACTS AND CLAIMS

11. Mr. Cummings signed Mr. Keefer as a client on behalf of Cummings Manookian in 2017 via an Attorney-Client Agreement ("CM Agreement"). The CM Agreement included a contingency fee provision, and the fee was to be earned by Cummings Manookian, via work performed by Brian Cummings and/or Brian Manookian only if Mr. Keefer received a monetary award via settlement, judgment, or award from the Keefer matter.

12. Mr. Cummings continued to work on the Keefer matter after leaving Cummings Manookian in 2018, including with the knowledge and consent of Mr. Keefer and for the benefit of Mr. Keefer and the other beneficiaries of the Keefer matter.

13. Mr. Cummings performed legal work on the Keefer matter for over three years until he withdrew as counsel for Mr. Keefer in October 2020.

14. Mr. Cummings withdrew as counsel in October 2020 after separate oral statements to him by Ms. Hagh and by Mr. Keefer during an approximately one week period indicated that their working relationships were strained. Mr. Cummings promptly called the Tennessee Board of Professional Responsibility ("BPR") asking if those statements required him

to withdraw as counsel, and he was told by the BPR with no equivocation and with no qualification that he was required to withdraw as counsel and to do so as soon as possible.

15. Mr. Cummings' withdrawal as counsel was not a choice he made, and it was not a voluntary withdrawal, because it was the comments by the client and by co-counsel, Ms. Hagh, that led to the situation that resulted in the BPR telling Mr. Cummings he was required to withdraw as soon as possible because he could no longer properly and ethically represent Mr. Keefer based on the comments made by Ms. Hagh and by Mr. Keefer.

16. Mr. Cummings was ethically required to follow the instructions and advice of the BPR in response to what action to take based on the comments made to him by Mr. Keefer and by Ms. Hagh.

17. In October 2020, Mr. Cummings provided a private letter to Mr. Keefer and Ms. Hagh communicating his withdrawal as counsel, and informing Mr. Keefer and Ms. Hagh that Mr. Cummings understood he was ethically required to withdraw as counsel based on the comments that Mr. Keefer and Ms. Hagh had very recently made. Neither Mr. Keefer nor Ms. Hagh ever communicated to Mr. Cummings orally or in writing that they had any factual or legal dispute with regard to the content of Mr. Cummings' October 2020 letter to them that communicating that Mr. Cummings believed he was required to withdraw as counsel because of the comments made by Ms. Hagh and by Mr. Keefer.

18. In October 2020, Mr. Cummings filed a Motion to Withdraw as Counsel for the Plaintiff ("Motion to Withdraw"). By the time that the Motion to Withdraw was filed, Mr. Keefer and Ms. Hagh had received a copy of Mr. Cummings October 2020 letter stating that Mr. Cummings believed he was ethically required to withdraw as a result of the comments made by

Ms. Hagh and by Mr. Keefer, and neither Mr. Keefer nor Ms. Hagh filed any type of Response in any way disputing or opposing the Motion to Withdraw.

19. On November 20, 2020, the Fifth Circuit Court entered an Order granting Mr. Cummings' Motion to Withdraw as Counsel.

20. On November 27, 2020, Mr. Cummings filed, in the Keefer lawsuit, a document entitled "Brian Cummings' Notice of Attorney's Lien" and this document cited Tennessee Code Annotated section 23-2-102.

21. Mr. Keefer and Ms. Hagh learned of the filing of Brian Cummings' Notice of Attorney's Lien within days of its filing, including Ms. Hagh receiving a copy through the Circuit Court's electronic filing system.

22. According to the publicly-available information on Caselink regarding the Davidson County Circuit Courts, the Fifth Circuit Court approved a settlement involving minor beneficiaries in the Keefer matter in October 2021.

23. The Circuit Court approved a settlement in this matter involving at least one minor beneficiary, and therefore the Court also found that the amount of the settlement was acceptable/reasonable, and any such Court-approval included approving the total attorneys' fee.

24. Tennessee Code Annotated section 23-2-102 provides a lien upon a plaintiff's or complainant's right of action from the date of the filing of the suit.

25. Prior to the filing of the lawsuit, Mr. Cummings performed all aspects of the intake of the case, including meeting with and signing the client within two days of the death of the client's mother.

26. After a review of the records from Vanderbilt Hospital, Mr. Cummings prepared the detailed expert summary letter which became the basis of the Complaint and the basis of the detailed summary letter sent to all experts.

27. Mr. Cummings attended the presuit mediation as the only attorney on behalf of the Plaintiff.

28. Mr. Cummings prepared and timely filed the 550 paragraph, 65 page, Complaint.

29. Mr. Cummings prepared and propounded a significant portion of the written discovery propounded upon the Defendant. Mr. Cummings worked with the Plaintiff in preparing all of Plaintiff's written responses to discovery, at least through October 2020.

30. Mr. Cummings contacted and retained all Rule 26 witnesses including all of the medical experts.

31. After the filing of the Complaint and written discovery, Mr. Cummings continued to work diligently on behalf of the Plaintiff, including, but not limited to, (a) keeping Mr. Keefer updated regarding case events, answering questions he had, and working with him and meeting with him to prepare his typed, formal responses to written discovery, (b) contacting, retaining, and preparing and sending summaries of case materials (including deposition testimony and responses to written discovery) and copies of the underlying case materials to all of Mr. Keefer's eventual Rule 26 experts (and being the only attorney for Mr. Keefer to do so), of which there were eight or more medical experts and one expert economist, (c) preparing Mr. Keefer for his deposition and defending his deposition (and being the only attorney for Mr. Keefer to do so), (d) preparing Edward Goodwin, the decedent's boyfriend/fiancé for his deposition and defending his deposition (and being the only attorney for Mr. Keefer to do so), (e) taking or defending approximately 14 of the approximately 30 depositions that occurred (some of these depositions

were the same witness deposed in two parts / two depositions), and (f) preparing and serving Mr. Keefer's original approximately 85 page Rule 26 disclosures (and being the only attorney for Mr. Keefer to do so).

32. The entire duration of the Keefer matter from the time of signing the client to the Court approval referenced herein was 54 months.

33. Mr. Cummings was counsel or co-counsel on the Keefer matter from April 2017 through October 2020, which is 42 months.

34. Mr. Cummings' involvement for 42 months of the 54 months of the total duration of the Keefer matter represents 78% of the total duration of the Keefer matter.

35. Another attorney, Brian Manookian ("Mr. Manookian"), did some of the work on the Keefer matter, including Mr. Manookian doing some of the work while Mr. Manookian was still a Member at Cummings Manookian.

36. Mr. Manookian was not listed as counsel of record for Mr. Keefer when the original Complaint was filed – only Mr. Cummings and Ms. Hagh were.

37. Mr. Manookian has never informed Mr. Keefer, Ms. Hagh, or Mr. Cummings that he is seeking any amount of an attorney's fee from the Keefer matter.

38. Mr. Manookian has never filed a Notice of Attorney's Lien regarding the Keefer matter.

39. During Mr. Cummings' 42 months of involvement as counsel for Mr. Keefer, he and his firm, Cummings Law, paid over $60,000.00 in litigation expenses incurred during that period of time on the Keefer matter.

40. During Mr. Cummings' 42 months of involvement as counsel for Mr. Keefer, he paid 90-100% of the litigation expenses incurred during that period of time.

41. By the time of Mr. Cummings' withdrawal, he had tried approximately 20 healthcare liability actions to verdict, including as second-chair or first-chair, and including trials in healthcare liability trials in the Fifth Circuit Court of Davidson County, Tennessee.

42. By the time of Mr. Cummings' withdrawal, he had successfully completed the oral exam and the written exam to become Board certified in Medical Malpractice by the American Board of Professional Liability Attorneys (ABPLA) and he was certified accordingly.

43. Mr. Keefer and the other beneficiaries in this matter have already received their net proceeds from the Keefer matter minus the litigation expenses and minus a total 33.33% attorneys' fee.

44. To date, Mr. Cummings has not been paid or provided an attorney's fee for his 42 months of involvement and work on the Keefer matter that has apparently settled with Court approval.

45. At this point, the amount of money determined to be provided to Mr. Cummings related his work in this matter and related to his attorney's lien does not change the amount of net proceeds to Mr. Keefer or the other beneficiaries from the Keefer matter.

46. The amount of money determined to be provided to Mr. Cummings related to his work in this matter and related to his attorney's lien affects what amount of money Ms. Hagh receives for her attorney work on the Keefer matter.

47. John Edwards ("Mr. Edwards"), an attorney from North Carolina, was co-counsel for Mr. Keefer at the end of this matter for less than 12 months.

48. Mr. Edwards and his law firm were already provided with an agreed-to amount of attorneys' fees amount for their work in this matter.

49. The remaining balance of attorney fees after Mr. Edwards received his fee are being held in the Bass, Berry, & Sims' Attorney Trust Account and will not be distributed until the dispute over attorneys' fees has been resolved.

50. Mr. Edwards and his law firm were paid an amount of attorneys' fees from the total attorneys' fees in this matter per the terms of an agreement that Mr. Edwards and his firm had entered into with Mr. Keefer and / or Ms. Hagh as to what that split or portion of the total attorney's fee would be.

51. During Mr. Cummings' involvement in the case, Mr. Cummings did not have an agreement with Mr. Keefer and / or Ms. Hagh as to what Mr. Cummings' split or portion of the total attorney's fee would be.

52. At this point, the amount of money determined to be provided to Mr. Cummings related to his work in this matter and related to his attorney's lien has no effect on the amount of attorneys' fees paid to Mr. Edwards and his law firm.

53. Mr. Cummings attempted to resolve this attorney's lien issue via mediation in late 2021, during which time Ms. Hagh represented Mr. Keefer on the attorney's lien issue, but that mediation effort did not resolve the matter.

54. When Ms. Hagh represented Mr. Keefer on the attorney's lien issue, her share of the total attorney's fee would decrease based on what amount of that total attorneys' fee was provided to Mr. Cummings.

55. In filings made by Ms. Hagh on behalf of Mr. Keefer on the attorney's lien issue, Ms. Hagh indicated that Mr. Keefer contended that arbitration was required on the attorney's lien issue, and Judge Joseph Binkley of the Fifth Circuit Court told Ms. Hagh to speak with Mr. Keefer to allow Mr. Keefer to choose if he wanted to proceed with arbitration or waive that

option. Months have passed since that instruction by Judge Binkley, and during that time counsel for Mr. Cummings has repeatedly asked Ms. Hagh in writing if Mr. Keefer was choosing to arbitrate the issue, and Ms. Hagh has communicated that she and Mr. Keefer claim to not understand what issue required resolution regarding Mr. Cummings' attorney's lien and have never communicated that Mr. Keefer chooses arbitration. Consequently, any potential right Mr. Keefer may have had to require arbitration of the attorney's lien issue was declined and/or was waived.

56. Also in filings made by Ms. Hagh on behalf of Mr. Keefer on the attorney's lien issue, Ms. Hagh indicated that Mr. Keefer contended that any litigation regarding the attorney's lien issue had to proceed via a lawsuit filed separately from the Keefer healthcare liability matter. In accordance with that position of Mr. Keefer as stated by Ms. Hagh that a separate lawsuit was required to be filed to address the attorney's lien issue, this present action is filed.

57. In 2019, Mr. Keefer entered into a new Attorney-Client Agreement regarding the Keefer matter with a firm named Manookian PLLC ("Manookian firm" and "Manookian agreement").

58. The only attorney who signed the Manookian agreement was Mr. Manookian.

59. The Manookian agreement was the first Attorney-Client Agreement that Mr. Keefer signed that mentioned Ms. Hagh in any way.

60. Ms. Hagh did not have a signature line on the Manookian agreement, and Ms. Hagh did not sign the Manookian agreement.

61. The Manookian firm was not a party to the Attorney-Client Agreement that Mr. Keefer entered into with Cummings Manookian in 2017.

62. The Manookian agreement stated, in part, that the law firm of Cummings Manookian no longer existed, and Mr. Keefer signed and entered into the Manookian agreement.

63. The Manookian agreement stated, in part, that a portion of the total attorneys' fees on the Keefer matter may be split with Brian Cummings of Cummings Law, and that this portion of the attorneys' fees paid to Brian Cummings would come from the total 33.33% contingence fee.

64. When Mr. Keefer signed the Manookian agreement in 2019, Mr. Keefer should have reasonably understood that Mr. Cummings would receive a portion of the total attorneys' fee on the Keefer matter for the legal work that Mr. Cummings performed on the Keefer matter. Mr. Cummings was not a party or signatory to the Manookian agreement.

65. The Manookian agreement was entered into without Mr. Cummings being told by Mr. Keefer, Ms. Hagh, or Mr. Manookian about the proposal that Mr. Keefer enter into the Manookian agreement.

66. Mr. Cummings provided legal services that benefited Mr. Keefer, and that benefitted Ms. Hagh regarding her interest in the resulting total attorney's fee, that Mr. Keefer and Ms. Hagh received, that were valuable legal services, and Mr. Cummings did so without an enforceable, written agreement with Mr. Keefer or with Ms. Hagh as to what split or portion of the total attorney's fee would be paid to Mr. Cummings under any situation.

67. During the time period that Mr. Cummings provided legal services for Mr. Keefer during the Keefer matter, Mr. Cummings expected to be compensated for his legal work.

68. During the time period that Mr. Cummings provided legal services for Mr. Keefer during the Keefer matter, Mr. Keefer and Ms. Hagh should have reasonably understood that Mr. Cummings expected to be compensated for his legal work on the Keefer matter.

69. It would be unjust for Mr. Cummings to not be compensated for his legal work on the Keefer matter.

70. Ms. Hagh would be unjustly enriched if she were to receive funds which were earned by Mr. Cummings for his service in the Shoemaker matter.

71. Mr. Cummings has never entered into an agreement of any kind that waived his right to be paid a reasonable amount for his legal work he performed on the Keefer matter if he was required to withdraw as counsel under our factual situation.

72. Mr. Cummings has never entered into an agreement of any kind that waived his right to an attorney's lien, including the right to an attorney's lien that arose at the time he filed the Keefer matter in 2019.

73. Mr. Cummings has never entered into an agreement of any kind that waived his right to be paid a reasonable amount for his legal work if he withdrew as counsel for any reason if Mr. Keefer had existing co-counsel continuing to be available for Mr. Keefer and who stayed involved in the matter.

74. Mr. Keefer signed and entered into two different Attorney-Client Agreements in the Keefer matter, one in 2017 and a second in 2019, and both of these Agreements referred to Mr. Cummings receiving some unidentified portion of the total attorneys' fee.

75. The statute that provides the applicable right to an attorney's lien for Mr. Cummings, Tenn. Code Ann. section 23-2-102, does not include any exclusionary language or provisions by which such a right to an attorney's lien can be waived or negated by any facts or alleged circumstances after an attorney filed the applicable lawsuit on behalf of a plaintiff.

Plaintiff's prayers for relief are:

1. That Defendants be served and required to answer as required by law.

2. That upon a hearing in this matter, the Court find that it would be unjust for Mr. Cummings not be fairly compensated for the work done in the Keefer matter and that it would be further unjust for Ms. Hagh to be paid and receive the benefits of Mr. Cummings work.

3. That the Court determine the amount Mr. Cummings is to be awarded for his Involvement in the Keefer matter pursuant to his timely filed Notice of Attorney's Lien, and pursuant to the common law remedies, including quantum meruit, unjust enrichment (to Mr. Keefer and/or Ms. Hagh), and equality and that he be granted judgement accordingly.

4. For general relief.

Respectfully submitted,

/s/ James W. Price, Jr.
**JAMES W. PRICE, JR., #3538**
Price, Hill, & Kolarich
201 4th Avenue N., Suite 1800
Nashville, TN 37219
(615) 244-5772 – phone
(615) 244-5821 - fax
Jprice@pricehillkolarich.com
*Attorney for the Plaintiff*