# Exhibit L

IN THE CHANCERY COURT FOR DAVIDSON COUNTY, TENNESSEE
AT NASHVILLE

BRIAN P. MANOOKIAN,

    Petitioner,

v.

    No. 20-0833-I

BOARD OF PROFESSIONAL
RESPONSIBILITY OF THE
SUPREME COURT OF TENNESSEE,

    Respondent.

## JUDGMENT

## I. BACKGROUND

Pursuant to Tennessee Supreme Court Rule 9, Section 33, the Petitioner, Brian P.

Manookian ("Mr. Manookian"), appeals the decision of the Hearing Panel of the Board of

Professional Responsibility (the "Hearing Panel") ordering that Mr. Manookian be suspended

from the practice of law for a period of twenty-four (24) calendar months. Mr. Manookian timely

filed a Petition for Review on August 21, 2020.

Mr. Manookian contends that the proceedings before the Hearing Panel were plagued by

constitutional, evidentiary, and procedural errors, and that the Hearing Panel misapplied the

relevant ABA Standards for Imposing Lawyer Sanctions ("ABA Standards").

He alleges his rights have been prejudiced because the Hearing Panel's report and

recommendation are:

    (1) in violation of constitutional and statutory provisions;
    (2) in excess of the Hearing Panel's jurisdiction;
    (3) made upon unlawful procedure;
    (4) arbitrary and capricious; and
    (5) not supported by substantial and material evidence.

More specifically, Mr. Manookian contends:

(1) The statements he made, which were the basis for the sanctions, were constitutionally protected;

(2) There were extensive procedural errors; and

(3) The Hearing Panel misapplied the relevant ABA Standard in determining the appropriate discipline.

Mr. Manookian thus moves this Court to vacate and reverse the Hearing Panel's decision, and to remand the case for a new hearing and resentencing.

The Board of Professional Responsibility of the Supreme Court of Tennessee (the "Board") contends that the Hearing Panel's findings, inferences, conclusions, and decisions with respect to Mr. Manookian's violation of the Tennessee Rules of Professional Conduct were not arbitrary or capricious, and are supported by substantial and material evidence in the record.

Furthermore, the Board contends that this Court—the Davidson County Chancery Court—has jurisdiction and proper venue over the matter, and that there were no structural procedural errors in the proceedings, which would require this Court to vacate the judgment. It also argues that the Hearing Panel decision did not violate Mr. Manookian's constitutional right to free speech.

The Board also contends:

(1) The Hearing Panel abused its discretion by disregarding the appropriate punishment set forth in the ABA Standards;

(2) The Punishment should have been disbarment rather than a two-year suspension.[1]

---

[1] However, this Court—by an order entered on July 12, 2021—granted Mr. Manookian's *Motion to Dismiss and Strike the Board's Claim as Cross-Appellant*, thereby striking and dismissing the Board's claim that the punishment should have been disbarment. The Court reasoned that the claim was not timely and properly filed in accordance with Tennessee Supreme Court Rule 9, § 33.1(a).

This Court heard oral arguments on July 9, 2021. Honorable William B. Acree, Jr., Senior Judge, sitting by designation over the Chancery Court of Davidson County, reviewed the Hearing Panel transcript, the official record with exhibits, and the appellate briefs, and considered applicable authorities.

For the following reasons, this Court affirms the Hearing Panel's findings of fact and conclusion of law, and the sanction of suspension from the practice of law for two years.

## A. PROCEDURAL HISTORY

This matter stems from a culmination of complaints filed by various individuals against Mr. Manookian, and they are summarized as follows.

The Board filed its original Petition for Discipline on December 18, 2017.[2]

The Board filed a Supplemental Petition for Discipline on March 22, 2018. The Supplemental Petition was based upon a complaint filed by C.J. Gideon, Esq., who was opposing counsel to Mr. Manookian in a medical malpractice case.

The Board filed a Second Supplemental Petition for Discipline on May 24, 2019, based upon complaints filed by Judge Don R. Ash and Phillip North, Esq. These complaints relate to conduct arising out of the same medical malpractice case.

The Hearing Panel conducted a hearing on February 25, 26, and 27, 2020.

On May 20, 2020, the Hearing Panel found by a preponderance of the evidence that during the course of the medical malpractice case, Mr. Manookian had violated Rules of Professional Conduct 1.9, 4.4, 8.2, and 8.4. It held that ABA Standard 4.31 and 6.21 were the appropriate baseline sanctions for Mr. Manookian's violations, and suspended Mr. Manookian from the practice of law for two years.

---

[2] The Hearing Panel dismissed the complaint without prejudice in an agreed order entered on December 10, 2019.

The Hearing Panel also ordered Mr. Manookian to attend at least 12 hours of anger management training, and to certify his attendance to the Board of Professional Responsibility. The Hearing Panel made his attendance and certification of anger management training a condition precedent to the filing of any petition for his reinstatement.

Prior to the May 20, 2020 Hearing Panel Report and Recommendation ordering Mr. Manookian to be suspended from the practice of law for two years, the Tennessee Supreme Court had suspended Mr. Manookian from the practice of law on the following occasions:

(1) On September 21, 2018, Mr. Manookian was temporarily suspended from the practice of law based on a finding that he posed a threat of substantial harm to the public.[3]

(2) On May 17, 2019, the Tennessee Supreme Court dissolved the temporary suspension, subject to Mr. Manookian's ongoing compliance with certain conditions.

(3) On May 21, 2019, Mr. Manookian was reinstated to the practice of law.

(4) On October 11, 2019, Mr. Manookian was again temporarily suspended from the practice of law based on two incidents, which are unrelated to the conduct presently before this Court.[4]

The Tennessee Supreme Court adopted the Hearing Panel's finding that Mr. Manookian violated a condition of his dissolution of temporary suspension and determined that he posed a threat of substantial harm to the public. It ordered the Board to proceed with "due speed" toward an ultimate resolution of the discipline at issue in this appeal.

---

[3] The Tennessee Supreme Court denied two petitions by Mr. Manookian asking the Court to dissolve his temporary suspension.

[4] In the first incident, the Hearing Panel found that Mr. Manookian improperly communicated with the client of an opposing counsel by sending the client an email designed to intimidate the client and undermine the client's relationship with the client's attorney.

In the second incident, Mr. Manookian emailed opposing counsel a photograph of the opposing counsel's wife and his home, causing opposing counsel to be fearful the safety of his family.

The Court notes that the Tennessee Supreme Court has entered two (2) orders denying Mr. Manookian's petitions for dissolution of his October 11 2019 temporary suspension.

On August 21, 2020, Mr. Manookian sought review of the Hearing Panel's decision by filing a Petition for Review, and on August 28, 2020, the Chief Justice of the Tennessee Supreme Court designated Judge William B. Acree, Jr. to hear this lawyer-disciplinary appeal.

## B. FACTS

This case stems from a serious of written communications sent by Mr. Manookian.

The Findings of Fact of the Hearing Panel accurately reflect the record and are incorporated herein by reference.

To provide clarity to this judgment, the Court summarizes the findings of fact as follows.

The complaints filed against Mr. Manookian all involve conduct relating to the medical malpractice case—*Shao v. HCA Health Services, Inc.*—in which Mr. Manookian and his co-counsel, Brian Cummings, represented the plaintiff.

Specifically, on September 16, 2016, Mr. Manookian filed a medical malpractice case in the Davidson County Circuit Court on behalf of the plaintiff, Steven Shao, against the defendants HCA Health Services, Inc., d/b/a Summit Medical Center, Toby Smith, M.D., and Middle Tennessee Pulmonary Associates, PLLC.

C.J. Gideon, a local Nashville attorney, eventually came to represent the defendant HCA Health Services, Inc. on July 25, 2017.

Phillip North, another local Nashville attorney, similarly came to represent the defendants Dr. Toby Smith and Middle Tennessee Pulmonary Associates, PLLC on March 22, 2017.[5]

---

[5] The Court notes that before Phillip North entered the case as substitute counsel, the defendants Dr. Toby Smith and Middle Tennessee Pulmonary Associates, PLLC were represented by the late Michael Geracioti.

Judge Thomas Brothers was assigned to hear the case.

It was not until approximately a year after Mr. Manookian filed the medical malpractice case that he began sending a series of troubling and offensive written communications. These communications—compounded by Mr. Manookian's enthusiasm for caustic and hostile footnotes—would become the basis for the complaints filed against him, and which are at issue today.

The Court identifies seven (7) of such written communications, and summarizes them in chronological order below. All reference the case of *Shao v. HCA Health Services, Inc.*, the medical malpractice case in which C.J. Gideon, Phillip North, and Mr. Manookian were counsel.

### 1. August 19, 2017: Email to Opposing Counsel Regarding his Daughter

During the pendency of the medical malpractice lawsuit, C.J. Gideon—who was representing the defendant HCA Health Services, Inc.—wrote a letter to Mr. Manookian about how he believed Mr. Manookian's responses to certain written discovery requests were insufficient. In the letter—dated August 17, 2017—Mr. Gideon specifically explained why Mr. Manookian's responses needed to be supplemented, and urged him to rectify them as soon as possible.

Two days later, on August 19, 2017 (the "August 19, 2017 email"), Mr. Gideon received an email through his law firm email address from Mr. Manookian through his law firm email address. The email was about Mr. Gideon's daughter, and how Mr. Manookian knew information about the daughter that was personal and embarrassing. Mr. Manookian stated that

---

Mr. Geracioti passed away on March 16, 2017, the very same day that Mr. Manookian and his co-counsel filed a Motion for Default Judgment against Mr. Geracioti's clients. After Mr. North substituted Mr. Geracioti as counsel, he filed a motion for more time to review the client file, which Mr. Manookian and his co-counsel opposed. The trial court denied the Motion for Default Judgment.

he knew that the daughter worked for a company where he had many friends, and that he would make it a point to see what he could do to "influence" her prospects at the company.

During the hearing conducted by the Hearing Panel, Mr. Gideon testified that upon reading the email, he became sick to his stomach and angry. This is because the email referenced an incident regarding his daughter, which he characterized as the worst time of his and his wife's life. Mr. Gideon was also worried that Mr. Manookian could negatively affect his daughter's prospects at the company. He considered the email to be an attack on his daughter's livelihood and her well-being.

Mr. Gideon stated that the August 19, 2017 email was a "brushback pitch," aimed to get him off Mr. Manookian's back during the medical malpractice lawsuit.

Mr. Manookian, however, testified that he was simply trying to help Mr. Gideon's daughter and that he was taking the high road.

The Court notes that the August 19, 2017 email was sent when counsel in the medical malpractice case were actively exchanging discovery and discussing discovery disputes.

As a result of the email, Mr. Gideon filed a motion for sanctions against Mr. Manookian on August 24, 2017, only attaching as an exhibit a copy of the subject line of the August 19, 2017 email. He redacted his daughter's name and the name of her employer, and purposely did not attach the email in its entirety as a means to protect his daughter's privacy.

Nonetheless, in his response to the motion for sanctions, Mr. Manookian made it a point to attach several exhibits—including a copy of the August 19, 2017 email containing the embarrassing information about Mr. Gideon's daughter—unredacted. The exhibits revealed, among other things, the name of Mr. Gideon's daughter, the name of her high school, and the name of her employer. Mr. Manookian made no effort to redact the daughter's name.

In an order dated September 28, 2017, which ruled upon Mr. Gideon's motion for

sanctions, Judge Brothers found the following with respect to the August 19, 2017 email:

1. It was a threat against the livelihood of Mr. Gideon's daughter;
2. It was a thinly veiled threat to embarrass Mr. Gideon, his child, and his
   family;
3. It was an act of attempted intimidation meant to secure a tactical advantage
   over opposing counsel;
4. It was a communication between opposing counsel in a case pending for the
   court; and
5. Mr. Manookian's conduct was repellent and shameful.

In his response to Mr. Gideon's motion for sanctions, Mr. Manookian not only

intentionally disclosed the name of Mr. Gideon's daughter, but he also directly referenced Mr.

Gideon's son, which is the next troubling written communication at issue in this appeal.

## 2. **September 5, 2017: Court Document Regarding an Opposing Counsel's Son**

On September 5, 2017, Mr. Manookian filed a response to Mr. Gideon's motions for

sanctions, specifically referring to Mr. Gideon's son in Footnote 1.

Footnote 1 references Mr. Manookian's prior experience representing Mr. Gideon's son

in a civil suit. It is one sentence long, and although it states that Mr. Manookian represented the

son in the past, it does not explain the purpose of that lawsuit, or how it is relevant to Mr.

Gideon's motion for sanctions.

The Court finds that in Footnote 1, Mr. Manookian summarizes his representation of Mr.

Gideon's son in a non-objective manner, and its purpose was to invoke a negative reaction from

opposing counsel.

At the disciplinary hearing, Mr. Manookian admitted that his reference to the son in his

response to the sanctions was done in anger.

Finally, in the order dated September 28, 2017, which ruled upon Mr. Gideon's motion for sanctions, Judge Brothers found that Mr. Manookian's "identification of and unflattering reference" of Mr. Gideon's son in a footnote of a publicly filed response was "egregious."

Taken together, Judge Brothers concluded that Mr. Manookian's August 19, 2017 email referencing the daughter and September 5, 2017 footnote referencing the son were done to embarrass, annoy, and oppress Mr. Gideon via formal filings. He thus found Mr. Manookian's actions sanctionable and imposed monetary sanctions of $5,550.00 in attorney fees.

Judge Brothers concluded by stating that he "urges Mr. Manookian to learn from this unnecessary and unfortunate situation and in the future to conduct himself in a manner that is worthy of his profession."

Mr. Manookian did not appeal the imposition of sanctions issued by Judge Brothers in the September 28, 2017 order.

While the first two written communications at issue in this appeal involved opposing counsel Mr. Gideon and his family members, the subsequent written communications involved the other opposing counsel in the medical malpractice case—Phillip North.

While Judge Brothers conducted the hearing on sanctions against Mr. Manookian for the first two written communications, Senior Judge Don R. Ash conducted the hearing on sanctions filed against Mr. Manookian for the subsequent communications.[6]

The following five (5) subsequent communications were sent by Mr. Manookian using his law firm email account, were addressed to Mr. North using his law firm email account, and referenced the medical malpractice case in the subject line.

### 3. March 30, 2018: Email to Opposing Counsel Regarding a Judge's Opinion of Him

---

[6] On July 27, 2018, the Tennessee Supreme Court designated and assigned Senior Judge Don R. Ash to hear two pending motions to their conclusion including *Motion for Third Round of Sanctions Against Counsel for Plaintiff.*

Approximately six months after the order sanctioning Mr. Manookian for his conduct towards opposing counsel C.J. Gideon, Mr. Manookian delivered a series of five (5) disturbing communications directed towards the other opposing counsel in the medical malpractice case— Phillip North.

On March 30, 2018, Mr. Manookian sent an email to Mr. North regarding a discussion he, Mr. North, and the other lawyers in the medical malpractice case had at a case management conference with Special Master Marsh Nichols. The email stated in part:

> In addition, in response to Phillip North's specific inquiries regarding Judge Gayden, which Mr. North voiced at the most recent Case Management Conference in this matter; Plaintiff does not oppose:
>
> 1. Judge Gayden disclosing his actual experience, and resulting opinion, of Phillip North's reputation for truthfulness, honesty, and fidelity; and/or,
>
> 2. Judge Gayden disclosing his actual experience, and resulting opinion, on Phillip North's propensity for dishonesty, exaggeration and falsehood.

Mr. Manookian sent the March 30, 2018 email using his law firm email address directly to Mr. North through his law firm email address.

Mr. North testified that he was disturbed by the email, and the list of individuals who received the email. Mr. North stated that the email reflected Judge Gayden had personal knowledge of Mr. North's propensity for dishonesty, exaggeration, and falsehood, and would so testify.

Mr. Manookian testified at the disciplinary hearing that he had discussion with Judge Gayden about Mr. North, and that his opinions of him were not good. However, Judge Gayden testified at the disciplinary hearing and stated that Mr. North had a good reputation in the community for truthfulness and veracity, was a truthful person, and believed him to be an honest and straight-forward person.

Mr. North testified that he had spent 45 years establishing his reputation for honesty and integrity in Davidson County, and he found the email to be insulting, demeaning, embarrassing, and threatening, and that it was intended to distract him from preparing the medical malpractice case for trial.

### 4. June 7, 2018: Email to Opposing Counsel Regarding a Motion

Mr. North testified that on June 7, 2018, Mr. Manookian—through his law firm email address—sent Mr. North another email via his law firm email address. Mr. Manookian copied numerous attorneys and their staff as well.

The June 7, 2018 email stated in part:

> I've had a chance to review your most recent non-substantive motion. I applaud you on finally filing something other than a "me-too, piggy-back" motion on Gideon Cooper's effort; if not your actual scholarship. Putting pen to paper is a great first step, Phillip! If you keep at it, you never know what you might achieve!

Mr. North testified that the June 7, 2018 email was another effort by Mr. Manookian to insult and embarrass Mr. North in front of colleagues and staff. He believed that Mr. Manookian sent it in an effort to distract Mr. North from preparing his case for trial.

In response to the March 30, 2018, and the June 7, 2018 emails, Mr. North filed the *Motion for Third Round of Sanctions Against Counsel for Plaintiff* on June 15, 2018, asserting that Mr. Manookian published emails containing language that insulted, disparaged, demeaned, and embarrassed Mr. North.

Prior to the hearing on Mr. North's motion for sanctions, Mr. Manookian sent Mr. North a third email.

### 5. June 22, 2018: Email to Opposing Counsel Regarding a Certificate of Service

On June 22, 2018, Mr. Manookian wrote a third email to Mr. North and seven other

people. Mr. Manookian sent the email using his law firm email address to Mr. North through his

law firm email address.

The June 22, 2018 email stated in part:

Your tacky, dishonest tactics continue unabated in this case. I see you've stink [sic]
to the "bogus certificate of service" and "hold the mail game." This is embarrassing,
even for you and your firm. The irony of [sic] implicit in seeking sanctions against
me (for simply agreeing to allow you to seek testimony about your own character
at your own request) via a motion that you dishonestly certified is, no doubt, lost
on you...

I am disappointed, but not surprised, by your attempt to serve this sanctionable
piece of garbage less than one business day before a response would have been due.

During the disciplinary hearing, Mr. Manookian conceded that the email accused Mr.

North of committing fraud upon the court.

Mr. North testified that he believed there was no legitimate purpose for sending the June

22, 2018 email other than to insult, threaten, embarrass, and distract Mr. North from preparing

for trial in the pending medical malpractice case.

Mr. North also testified that he had not made any false certification as alleged by Mr.

Manookian.

After Mr. Manookian accused him of falsifying the Certificate of Service on his Motion

for Sanctions, Mr. North obtained the envelope from Mr. Manookian which the Motion for

Sanctions allegedly had arrived in, which showed a post-mark date of June 18, 2018, with the

correct amount of postage for it to arrive at its destination.

According to Mr. North's paralegal in an affidavit, she uses a different kind of address

label for Mr. North's pleadings than the one which was on the envelope provided by Mr.

Manookian. The paralegal explained that the label on the envelope submitted to the court by Mr.

Manookian is used by a different paralegal in the firm who does not work for Mr. North. That paralegal had mailed a pleading in a different case to Mr. Manookian on June 18, 2018, with the different envelope label than the type Mr. North uses, leading Mr. North to conclude that Mr. Manookian had allegedly switched envelopes in an effort to manufacture a basis for the accusation.

As a result, Mr. North filed for a Fourth Round of Sanctions against Mr. Manookian on July 20, 2018.

The Tennessee Supreme Court subsequently designated Senior Judge Ash to hear these sanctions on July 27, 2018.

As such, on September 19, 2018, Senior Judge Ash conducted a hearing on the Motions for Third and Fourth Round of Sanctions. The Order of September 28, 2018, addressed the emails sent by Mr. Manookian on March 30, 2018, June 7, 2018, and June 22, 2018.

Specifically, Judge Ash found that Mr. Manookian (1) continued to verbally attack opposing counsel despite instructions to stop such unprofessional conduct; (2) sent communication to Mr. North which threatened, insulted, disparaged, and embarrassed Mr. North, and (3) conducted himself in a reckless manner.

Judge Ash suspended Mr. Manookian from the practice of law in Davidson County and required Mr. Manookian to pay Mr. North a total of $37,164.00. He also awarded Mr. Gideon fees and expenses of $5,880.00 after he submitted his affidavit.

### 6. August 3, 2018: Letter to Opposing Counsel Regarding His Brother and a Judge's Reputation

Approximately six weeks after the June 22, 2018 email, Mr. Manookian sent Mr. North and Mr. Gideon an email on August 3, 2018, at 7:41 p.m. Mr. Manookian attached a letter

addressed to counsel in the medical malpractice case stating that he was disclosing certain information in response to the recent filings by Mr. North.

Twenty-two minutes later, at 8:03 p.m., Mr. Manookian sent another email to Mr. North, Mr. Gideon, and 18 other individuals with an attached letter. The attached letter referenced a voicemail Mr. Manookian allegedly received from Judge Steve North ("Judge North"), Mr. Phillip North's brother, and an alleged subsequent conversation between Mr. Manookian and Judge North.

Mr. Manookian invited Mr. North to listen to the voicemail and verify that it was indeed his brother's voice. However, Mr. North did not reply to the email because he believed it was an attempt to create friction between himself and his brother.

In Footnote 1 of the August 3, 2018 letter, Mr. Manookian accused Judge Brothers of being a corrupt judge, and that he based his statement in Footnote 1 from his conservation with Judge North. Mr. Manookian wrote the following in Footnote 1:

> Preliminary to lengthier phone call conducted at the gratuitous request of Retired Davidson County Circuit Court Judge Steve North, wherein Ret. Judge North states and opines upon personal knowledge, having served on the bench with Judge Tom Brothers and being the brother of Phillip North, that: Judge Tom Brothers is "corrupt" and has been for some time, that Judge Tom Brothers' "corruption" arises out of his financial needs; that Judge Tom Brothers' "corruption" has long resulted, and continues to result, in preferable, "corrupt" treatment for certain Nashville—based companies, which benefit from consistent, "corrupt" favorable rulings in Judge Brothers' courtroom, to the exclusion of justice; that such "corruption" has, and continues to, materially benefit, among others, C.J. Gideon and his firm, in his representation of certain "corrupt" clients; as well as lengthy disclosure and dissertation on Phillip North, all of which is material to the supposed grievances in Phillip North's "Motion for Third Round of Sanctions."

During the disciplinary hearing, Judge Brothers testified that the assertions in Footnote 1 were false, incredibly offensive, defamatory, and unfounded.

Mr. North viewed the allegation in Footnote 1 as excoriating Judge Brothers. He believed

the August 3, 2018 emails, as well as Footnote 1, were intended to drive a wedge and cause

friction between him and his brother by suggesting that his brother had provided derogatory

information.

### 7. August 4, 2018: Email to Opposing Counsel Regarding Him and His Family

Finally, on August 4, 2018, at 12:41 p.m., Mr. Manookian emailed Mr. North, Mr.

Gideon, and 17 other individuals. The email stated:

> I see that my email and attachments are being repeatedly opened at the IP address
> associated with the consumer Comcast cable account for 109 Meness Lane,
> Madison, Tennessee. That address is the residential property where you have
> consistently lived with your parents (other than for a brief period of time from 1984-
> 1986 where you rented unit 602 at the Capitol Towers on Gay Street) until the North
> Family Trust essentially gifted you the property for $10.00. Upon investigation,
> this gifted piece of property in North Nashville, given to you for $10 by your
> parents, represents the sole piece of real property you own at 68 years of age.
> Further confirming that you have read my email, records additionally reflect that
> Mona Dale Cornwell North—the woman for whom you left your wife and two
> minor daughters (Nicki and Neely)—has registered a Jeep Grand Cherokee (VIN:
> 1 C4RJFLG4JC274818, TN License Plate E66307) at the same address your
> parents gave you and where my email is being viewed. Please simply reply and
> confirm your brother Steve North's voice.

Mr. North testified that the August 4, 2018 email was threatening and offensive, and an

attempt to embarrass him, his wife, and his family. As he read the email, Mr. North stated that he

felt that the email was a gangster-like message from Mr. Manookian—akin to something you

would see in the movie The Godfather.

Mr. North further testified that the August 4, 2018 cause an enormous disruption to his

life and his practice. He was forced to update his security system, provide pictures of Mr.

Manookian to the security guards at his office, and he was always looking over his shoulder.

In response to the August 3, 2018 and August 4, 2018 emails, Mr. North filed a Motion

for Fifth Round of Sanctions Against Plaintiff's Counsel on August 15, 2018, asserting that Mr.

Manookian published emails containing language that threatened, insulted, disparaged, demeaned, and embarrassed Mr. North and his family, and was a blatant act of intimidation.

On October 15, 2018, the Tennessee Supreme Court designated Judge Ash again to hear these motions for sanctions, conducting a hearing at which Mr. Manookian failed to appear.

On October 22, 2018, Judge Ash entered an order finding that Mr. Manookian "continues to conduct himself in a reckless manner in utter disregard of the Court's directives," and suspended Mr. Manookian from the practice of law in Davidson County. Judge Ash also required Mr. Manookian to pay $11,874.00 to Mr. North and $1,175.00 to Mr. Gideon.

Mr. Manookian appealed the three (3) orders imposing sanctions against him. In particular, he challenged Judge Brothers' September 28, 2017 order, and Judge Ash's September 20, 2018, and October 22, 2018 orders.

Mr. Manookian challenged Judge Brother's order as being unconstitutionally vague and ambiguous, and a prior restraint upon his First Amendment right to free speech.

Mr. Manookian challenged Judge Ash's orders as unconstitutionally exceeding his authority, and the appropriateness of the award of fees to opposing counsel.

In an opinion entered on September 16, 2019, the Court of Appeals affirmed the sanctions, and rejected Mr. Manookian's argument that the order was an unconstitutional prior restraint on his free speech.

Mr. Manookian did not seek review of the decision of the Court of Appeals, and the case is now final.

## II. STANDARD OF REVIEW

The standard of review in a lawyer-disciplinary appeal is set out in Tennessee Supreme Court Rule 9, § 33.1(b), which provides:

The review shall be on the transcript of the evidence before the hearing panel and its findings and judgment. If allegations of irregularities in the procedure before the hearing panel are made, the trial court is authorized to take such additional proof as may be necessary to resolve such allegations. The trial court may, in its discretion, permit discovery on appeals limited only to allegations of irregularities in the proceeding. The court may affirm the decision of the hearing panel or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the party filing the Petition for Review have been prejudiced because the hearing panel's findings, inferences, conclusions or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the hearing panel's jurisdiction; (3) made upon unlawful procedure; (4) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or (5) unsupported by evidence which is both substantial and material in the light of the entire record. In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the hearing panel as to the weight of the evidence on questions of fact.

Furthermore, "[a]lthough the trial court may affirm, remand, reverse, or modify a Hearing

Panel decision, the trial court may not substitute its judgment for that of the panel as to the

weight of the evidence on questions of fact." *Board of Professional Responsibility v. Allison*, 284

S.W.3d 316, 322 (Tenn. 2009). This Court will not reverse the decision of the Hearing Panel so

long as the evidence "furnishes a reasonably sound factual basis for the decision being

reviewed." *Hughes v. Board of Professional Responsibility*, 259 S.W.3d 631, 641 (Tenn. 2008)

(quoting *Jackson Mobilphone Co. v. Tennessee Pub. Serv. Comm'n*, 876 S.W.2d 106, 111 (Tenn.

Ct. App. 1993)).

Finally, the Tennessee Supreme Court has articulated that "[w]hen none of the first three

grounds for reversal are present . . . the hearing panel should be upheld unless the decision was

either arbitrary or capricious, 'characterized by an abuse, or clearly unwarranted exercise, of

discretion' or lacking in support by substantial and material evidence." *Hughes* at 641 (quoting

*CF Indus. v. Tenn. Pub. Serv. Comm'n.*, 599 S.W.2d 536, 540 (Tenn. 1980)). "An arbitrary [or

capricious] decision is one that is not based on any course of reasoning or exercise of judgment,

or one that disregards the facts or circumstances of the case without some basis that would lead a reasonable person to reach the same conclusion." *Id.* at 641.

With regards to determining whether there is substantial and material evidence to uphold a decision, the Tennessee Supreme Court has stated that "the court should review the record carefully to determine whether the administrative agency's decision is supported by 'such relevant evidence as a rational mind might accept to support a rational conclusion.'" *Id.* (citing *Jackson Mobilphone Co. v. Tennessee Pub. Serv. Comm'n*, 876 S.W.2d 106, 111 (Tenn. Ct. App. 1993).

## III. ANALYSIS

Mr. Manookian's trial brief and reply brief collectively are in excess of 100 pages, but the arguments asserted therein can be summarized as follows:

(1) the statements for which he was sanctioned were constitutionally protected;
(2) there were procedural errors; and
(3) the sanctions were improper.

The Hearing Panel succinctly expressed the basis for its report and recommendation in the first three paragraphs:

> Lawyers make mistakes. Some lawyers make numerous mistakes.
>
> This matter is not about a lawyer making mistakes. Instead, it is about a lawyer who recklessly accused a judge of being corrupt, repeatedly belittled and degraded opposing counsel, and made a threat against a lawyer's family.
>
> Prior to appearing before this panel, Brian Manookian had a history of failing to adhere to the Rules of Professional Conduct and ignoring warnings from members of the judiciary. He has already been sanctioned and suspended from the practice of law on multiple occasions, yet his unethical conduct continued.

*Hearing Panel Report and Recommendation*, May 20, 2020 (p. 1983).

Despite some argument to the contrary, which the Court finds to be unfounded, the *Findings of Fact* of the Hearing Panel are undisputed. This Court has expressly approved those findings and has incorporated those findings into this judgment by reference.

## A. FIRST AMENDMENT CHALLENGES

The primary argument made by Mr. Manookian is that he was entitled to make these statements—however distasteful, repugnant, disrespectful, or threatening they may have been—because he is constitutionally entitled to do so.

Each of the seven written communications, which were the basis of the Board's complaints, involved a lawsuit in which Mr. Manookian represented the plaintiff. The people to whom the communications were directed and who were the targets of Mr. Manookian's fury and scorn were the opposing counsel and the trial judge.

At the outset, the Court notes that the Court of Appeals rejected Mr. Manookian's argument that the trial court erred by restraining his free speech when it sanctioned him. *Shao ex rel. Shao v. HCA Health Servs. of Tennessee, Inc.*, No. M201802040COAR3CV, 2019 WL 4418363, at *6 (Tenn. Ct. App. Sept. 16, 2019).

Additionally, the Tennessee Supreme Court necessarily rejected this argument when it suspended Mr. Manookian from the practice of law for making such statements.

In *Bd. of Pro. Resp. v. Parrish*, 556 S.W.3d 153 (Tenn. 2018), the Tennessee Supreme Court considered the issue of whether pejorative statements about judges in recusal motions filed in state court were protected by the First Amendment of the United States Constitution and Article 1, § 19 of the Tennessee Constitution.

It stated:

> In cases analyzed in terms of the First Amendment, courts in numerous other jurisdictions, as well as the United States Supreme Court, have rejected the

proposition that the First Amendment provides absolute protection to attorney speech.

> A majority of courts that have dealt with attorney speech in disciplinary proceedings have not drawn a distinction between in-court and out-of-court statements in considering the issue and have adopted an objective standard in determining whether attorney speech is entitled to First Amendment protection.

> Under the objective standard, the court assesses the statements in terms of "what the reasonable attorney, considered in light of all his professional functions, would do in the same or similar circumstances ... [and] focus[ing] on whether the attorney had a reasonable factual basis for making the statements, considering their nature and the context in which they were made." Gardner, 793 N.E.2d at 431 (citations omitted). "It is the reasonableness of the belief, not the state of mind of the attorney, that is determinative." Holtzman, 573 N.Y.S.2d 39, 577 N.E.2d at 34.

*Id.* 165-66.

The Tennessee Supreme Court ultimately held that the objective "reasonable attorney"

standard is the appropriate standard to apply in a disciplinary proceeding involving an attorney's

in-court speech. *Id.* 166. It concluded by stating:

> Utilizing this objective standard, the hearing panel found that [the attorney] had made statements in the motions to recuse about the integrity of the judges on the Court of Appeals that a reasonable attorney would believe to be false, and that [the attorney] had made those statements with reckless disregard as to their truth or falsity.

> In sum, he in-court statements that [the attorney] made in the recusal motions were not protected by the First Amendment.

*Id.* 166-67.

The Parrish Court's holding was based upon statements made by an attorney—Mr.

Parrish—in a motion and were clearly in-court statements.

Here, Mr. Manookian's statements were not made in court filings, but primarily via email

communications, which were connected to or arose out of a judicial proceeding, and involved

people in that very same judicial proceeding.

The logic in *Parrish* clearly applies here. The statements made by Mr. Manookian, when analyzed under the objective standard, were not entitled to First Amendment Protection.

Mr. Manookian's numerous statements were made in the course of a judicial proceeding but had no relevance to that proceeding. There was no purpose to the statements other than to intimidate or offend the opposing counsel or the trial court. Furthermore, no reasonable attorney would have acted as Mr. Manookian. Even though the trial court sanctioned Mr. Manookian on three occasions, he remained undeterred.

Offensive statements in court-related communications and in statements made in pleadings filed with the court is a difference without distinction.

This Court finds that under the Parrish Court's reasoning, the statements made by Mr. Manookian are not constitutionally protected. This result is supported by the decision of the Court of Appeals in affirming sanctions imposed upon Mr. Manookian under the communications at issue here. It is also supported by the suspension of Mr. Manookian by the Tennessee Supreme Court upon commensurate statements also at issue in this appeal.

## B. PROCEDURAL CHALLENGES

Mr. Manookian alleges procedural errors:

The fact that a Hearing Panel Member who participated in this action desired to be employed by the Board, (2) a replacement Hearing Panel Member indisputably failing to review the complete proceedings in this matter, (3) ex-Disciplinary Counsel's extreme and demonstrable bigotry and other animus, (4) the Board's intentional spoliation of evidence demonstrating the Board's unlawful viewpoint discrimination—have also infected this proceeding from its inception and during this appeal.

Tr. Br. 4-5.

As conceded by Mr. Manookian later in his brief, the Court has previously ruled on these issues, which were raised by motion.

A hearing panel member—after participating in the proceeding but before a decision was made—withdrew from the panel to apply for a position with the Board of Professional Responsibility. A replacement member was then designated, and the replacement member participated in the unanimous decision. The replacement member read the evidence but did not read the opening and closing statements of counsel.

This Court found that (1) it was only necessary for the Hearing Panel member to review the evidence and not the opening & closing statements; (2) the withdrawal of the hearing panel member did not affect the process; and (3) in any event, a majority who were present during the hearing found in favor of the Board and against Mr. Manookian.

Mr. Manookian also raised by motion issues concerning alleged bigotry of an ex-disciplinary counsel, and spoiliation of evidence of that bigotry. The Court denied those motions because such activity was not relevant to the complaints against Mr. Manookian. This appeal is limited to the evidence presented to the Hearing Panel.

## C. VIOLATIONS OF THE RULES OF PROFESSIONAL CONDUCT AND SANCTIONS

In Tennessee, attorneys charged with disciplinary violations have a right to an evidentiary hearing before a hearing panel, which determines whether a violation has occurred and, if so, the appropriate sanction for the violation. *Bd. of Prof'l Responsibility v. Daniel*, 549 S.W.3d 90, 99 (Tenn. 2018) (citing *Maddux v. Bd. of Prof'l Responsibility*, 409 S.W.3d 613, 621 (Tenn. 2013)).

A hearing panel must consider the applicable ABA Standards when determining the proper discipline for attorney misconduct. *Walwyn v. Bd. of Prof'l Responsibility*, 481 S.W.3d 151, 166 (Tenn. 2015) (citing Tenn. Sup. Ct. R. 9, § 8.4). The ABA Standards provide "'guideposts' for attorney discipline but are not considered 'rigid rules that dictate a particular outcome.' " *Bd. of Prof'l Responsibility v. Barry*, 545 S.W.3d 408, 421 (Tenn. 2018) (quoting

*Hyman*, 437 S.W.3d at 447). "[A]nalysis of the proper discipline involves two steps: first, identify the presumptively appropriate sanction applicable to the established misconduct, and then consider whether that sanction should be increased or decreased due to aggravating and mitigating circumstances, if any." *Bd. of Prof'l Responsibility v. Cowan*, 388 S.W.3d 264, 268 (Tenn. 2012); see also ABA Standard 9.1. Absent mitigating or aggravating factors, the presumptive sanctions apply. *Talley v. Bd. of Prof'l Responsibility*, 358 S.W.3d 185, 194 (Tenn. 2011).

Tribunals should also consider the duty violated by the lawyer, the lawyer's mental state, and actual or potential injury caused by the lawyer's misconduct. ABA Standard 3.0; see also *Cowan*, 388 S.W.3d at 268. "[T]he severity of the presumptive sanction varies depending upon the lawyer's mental state—whether the lawyer acted intentionally, knowingly, or negligently— and the seriousness of the actual or potential injury caused by the lawyer's misconduct." *Maddux v. Bd. of Prof'l Responsibility*, 409 S.W.3d 613, 624 (Tenn. 2013).

Here, the Hearing Panel found that Mr. Manookian violated four (4) Tennessee Rules of Professional Conduct: Rule 8.2(a)(1), Rule 4.4(a)(1), Rule 9.1(c), and Rule 8.4(a) & (d). The corresponding presumptive sanctions, as recommended by the American Bar Association, are listed below.

### 1. Rule 8.2(a)(1) (Judicial and Legal Officials)

The Hearing Panel found that Mr. Manookian violated Rule 8.2(a)(1), and that the presumptive sanction was ABA Standard 6.21 (Disbarment).

**Rule 8.2(a)(1)**
**(a) A lawyer shall not make a statement that the lawyer knows to be false or that is made with reckless disregard as to its truth or falsity concerning the qualifications or integrity of the following persons:**
**1. a judge.**

Specifically, the Hearing Panel found that Mr. Manookian violated Rule 8.2(a)(1) when he sent the August 3, 2018 letter to Mr. North that accused Judge Brothers of being corrupt.

Under the ABA Standards, Standard 6.2 (Abuse of the Legal Process) applies.

The sanctions for an attorney's abuse of the legal process under **ABA Standard 6.2** are as follows:

- **6.21 Disbarment**: Disbarment is generally appropriate when a lawyer knowingly violates a court order or rule with the intent to obtain a benefit for the lawyer or another, and causes serious injury or potentially serious injury to a party or causes serious or potentially serious interference with a legal proceeding.

- **6.22 Suspension**: Suspension is generally appropriate when a lawyer knows that he or she is violating a court order or rule, and causes injury or potential injury to a client or a party, or causes interference or potential interference with a legal proceeding.

- **6.23 Reprimand**: Reprimand is generally appropriate when a lawyer negligently fails to comply with a court order or rule, and causes injury or potential injury to a client or other party, or causes interference or potential interference with a legal proceeding.

- **6.24 Admonition**: Admonition is generally appropriate when a lawyer engages in an isolated instance of negligence in complying with a court order or rule, and causes little or no actual or potential injury to a party, or causes little or no actual or potential interference with a legal proceeding.

### 2. Rule 4.4(a)(1) (Respect for the Rights of Third Persons)

The Hearing Panel found that Mr. Manookian violated Rule 4.4(a)(1), and that the presumptive sanction was ABA Standard 6.21 (Disbarment).

**Rule 4.4(a)(1)**
**(a) In representing a client, a lawyer shall not:**

> **(I) use means that have no substantial purpose other than to embarrass, delay, or burden a third person or knowingly use methods of obtaining evidence that violate the legal rights of such a person.**

Specifically, Mr. Manookian violated Rule 4.4(a)(1) numerous times throughout the

medical malpractice case, undeterred by trial court admonitions and sanctions. Those instances

include when he sent:

(1) the August 19, 2017 email to opposing counsel regarding the opposing counsel's daughter;

(2) the March 30, 2018 email to Mr. North and others, regarding a judge's opinion of Mr. North; (3) the August 3, 2018 email and attached letter sent to Mr. North and others accusing Judge Brothers of being corrupt; and

(3) the August 4, 2018 email sent to Mr. North and others regarding Mr. North and his family.

The sanctions for an attorney's abuse of the legal process under **ABA Standard 6.2** are

as follows: 6.21 (Disbarment); 6.22 (Suspension); 6.23 (Reprimand); and 6.24 (Admonition).

### 3. Rule 1.9(c) (Duties to Former Clients)

The Hearing Panel found that Mr. Manookian violated Rule 1.9 (c), and that the

presumptive sanction was ABA Standard 4.21 (Disbarment).[7]

#### Rule 1.9(c)

**(c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter reveal information relating to the representation or use such information to the disadvantage of the former client unless (1) the former client gives informed consent, confirmed in writing, or (2) these Rules would permit or require the lawyer to do so with respect to a client, or (3) the information has become generally known.**

Specifically, Mr. Manookian violated Rule 1.9(c) by revealing information relating to his

prior representation of a client when he submitted the September 5, 2017 court document that

---

[7] In the Hearing Panel's Order, the Hearing Panel incorrectly referred to ABA Standard 4.31 rather than ABA Standard 4.21. The reference was an obvious inadvertence.

maliciously referenced an opposing counsel's son. The Hearing Panel found that through that court document, Mr. Manookian disclosed client confidences from a case that had concluded nearly a decade ago without obtaining the former client's consent (who also happened to be the opposing counsel's son).

The Hearing Panel also relied upon ABA Formal Opinion 479, which states as follows:

> Unless information has become widely recognized by the public (for example by having achieved public notoriety), or within the former client's industry, profession, or trade, the fact that the information may have been discussed in open court, or may be available in court records, in public libraries, or in other public repositories does not, standing alone, mean that the information is generally known for Model Rule 1.9(c)(1) purposes. Information that is publicly available is not necessarily generally known. Certainly, if information is publicly available but requires specialized knowledge or expertise to locate, it is not generally known within the meaning of Model Rule 1.9(c)(1).

Under the ABA Standards, Standard 4.2 (Failure to Preserve the Client's Confidences) applies.

The sanctions for an attorney's failure to preserve client's confidences under **ABA Standard 4.2** are as follows:

- **4.21 Disbarment**: Disbarment is generally appropriate when a lawyer, with the intent to benefit the lawyer or another, knowingly reveals information relating to representation of a client not otherwise lawfully permitted to be disclosed, and this disclosure causes injury or potential injury to a client.

- **4.22 Suspension**: Suspension is generally appropriate when a lawyer knowingly reveals information relating to the representation of a client not otherwise lawfully permitted to be disclosed, and this disclosure causes injury or potential injury to a client.

- **4.23 Reprimand**: Reprimand is generally appropriate when a lawyer negligently reveals information relating to representation of a client not otherwise lawfully permitted to be disclosed and this disclosure causes injury or potential injury to a client.

- **4.24 Admonition**: Admonition is generally appropriate when a lawyer negligently reveals information relating to representation of a client not otherwise lawfully permitted to be disclosed and this disclosure causes little or no actual or potential injury to a client.

### 4. Rule 8.4(a) & (d) (Misconduct)

The Hearing Panel found that Mr. Manookian violated Rule 8.4(a) & (d), and that the presumptive sanction was ABA Standard 6.21 (Disbarment).

**Rule 8.4(a) & (d)**
**It is professional misconduct for a lawyer to:**

**(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another; and**

**(d) engage in conduct that is prejudicial to the administration of justice.**

Specifically, Mr. Manookian violated Rule 8.4(a)&(d) numerous times throughout the medical malpractice case. Those specific instances include all seven communications that are at issue in this appeal.

The sanctions for an attorney's abuse of the legal process under **ABA Standard 6.2** are as follows: 6.21 (Disbarment); 6.22 (Suspension); 6.23 (Reprimand); and 6.24 (Admonition).

In sum, for each of the violations described above, the Hearing Panel found the presumptive sanction was disbarment.

The Hearing Panel found four (4) aggravating factors, and no mitigating factors.[8] The aggravating factors were: (1) prior disciplinary history; (2) multiple offenses; (3) refusal to acknowledge wrongful nature of his conduct; and (4) substantial experience in the practice of law.

The Board—in its brief—argued that the order suspending Mr. Manookian rather than disbarring him was arbitrary and capricious because of its downward deviation from the presumptive sentence.

However, this Court, in an earlier order, struck the Board's assertions because it did not properly and timely appeal this issue.

### D. The Court's Assessment of the Hearing Panel's Findings of Violations

As previously stated, the Court finds that the Findings of Fact of the Hearing Panel are supported by the evidence, which is both substantial and material in light of the entire record, and it incorporates those findings by reference.

The Court further finds that the violations of the Rules of Professional Conduct as found by the Hearing Panel are supported by evidence, which is both substantial and material in light of the entire record.

With respect to those communications, the Court finds as follows.

The document concerning opposing counsel's son was nothing more than an attempt to intimidate opposing counsel by using disparaging language about the son – whom Mr. Manookian previously represented. Such was a violation of Rule 1.9(c).

---

[8] The ABA Standards provide guidance an "illustrative rather than exclusive" list of various aggravating and mitigating factors in sections 9.1, 9.2, and 9.3. *Bd. of Pro. Resp. of Supreme Ct. of Tennessee v. Daniel*, 549 S.W.3d 90, 100 (Tenn. 2018); ABA Standard 9.0.

The emails of (1) August 19, 2017, regarding opposing counsel's daughter; (2) March 20, 2018, to Mr. North and others regarding a judge's opinion of Mr. North; (3) August 3, 2018, and the attached letter sent to Mr. North and others accusing Judge Brothers of being corrupt; and (4) August 4, 2018, sent to Mr. North and others regarding Mr. North and his family, are clearly violations of Rule 4.4(a)(1).

There was absolutely no purpose for the abusive language included therein, which was in any way connected to the legal proceeding. The language was abusive, intimidating, threatening, and untrue.

The August 3, 2018 letter to opposing counsel regarding his brother and a judge's reputation was in violation of Rule 8.2(a)(1). Mr. Manookian made statements about a judge's integrity, which he knew or should have known was false. The statements accused the judge of dishonesty and impliedly asserted he had committed criminal acts. There was no purpose related to the litigation in sending the letter.

All seven of the communications were in violation of Rule 8.4(a) and (d). As previously stated, such were unrelated and irrelevant to the ligation and made with a sinister motive.

In summary, the Court finds the findings of the Hearing Panel with respect to the violations of the Rules of Professional Conduct were not arbitrary or capricious, and were supported by evidence, which is both substantial and material in light of the entire record.

The Hearing Panel found that the presumptive sanctions for each violation was disbarment under 4.21 and 6.21. Both standards require the offending attorney to act knowingly and with the intent to cause a consequence.

The repeated violations by Mr. Manookian, after having been admonished and sanctioned, clearly establish that he acted knowingly with an intended result.

The decision of the Hearing Panel in finding the presumptive sanction of disbarment was not arbitrary or capricious, and was supported by evidence, which is both substantial and material in light of the entire record.

The Hearing Panel found four (4) enhancing factors and no mitigating factors. This Court finds that the Hearing Panel's finding of the enhancing factors and lack of mitigating factors was supported by evidence, which is both substantial and material in light of the entire record.

Mr. Manookian's disciplinary history consists of a private informal admonition, a private reprimand, and numerous sanctions imposed upon him in the *Shao* case. He has committed multiple offenses on a repetitive basis. He has yet to acknowledge the wrongful nature of his conduct. Mr. Manookian has practiced law since 2007. In sum, the enhancing factors are clearly supported by substantial and material evidence.

Mr. Manookian argues that the Hearing Panel should have found that the mitigating factor of "imposition of other penalties or sanctions" was applicable.

Two judges imposed monetary sanctions upon Mr. Manookian on three separate occasions in the *Shao* case. However, Mr. Manookian has paid none of those sanctions. The Tennessee Supreme Court temporarily suspended Mr. Manookian's license, then lifted the suspension, and finally reinstated the suspension because of a violation of the suspension. To borrow an old adage, Mr. Manookian is the author of his own misfortune, and is not entitled to credit because of the prior sanctions imposed upon him.

Mr. Manookian also argues that the punishment was vastly more punitive than punishments received by others. The punishments imposed in other cases or the lack thereof, and the circumstances which caused such punishments in those cases, is not in the record. The Court is not required to impose a punishment similar to those rendered in other cases.

The sanction ordered by the Hearing Panel was a two-year suspension rather than the presumptive sanction of disbarment. The Board argues that the Hearing Panel's decision in reducing the sanction from disbarment to a two-year suspension without an explanation or finding to support the downward deviation was arbitrary and capricious.

The Board is correct in this assertion and had it timely and correctly appealed this issue, the Court would have imposed a sanction of disbarment. However, the Board did not properly raise this issue. Thus, while Mr. Manookian may believe the sanction is unduly harsh, it is significantly less than what it should have been.

The suspension, which Mr. Manookian is currently under, was ordered by the Tennessee Supreme Court in proceedings separate from this appeal. Neither the Hearing Panel nor the Court has the authority over the suspension ordered by the Tennessee Supreme Court or to run the suspension ordered herein concurrently with the Supreme Court's suspension.

Herein, Mr. Manookian's violative conduct was repetitive and contrary to the demeanor and conduct expected of a member of the Tennessee Bar Association. The suspension was supported by substantial and material evidence in light of the entire record.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that (1) the communications made by Mr. Manookian were not constitutionally protected; (2) there were no procedural errors in the record; and (3) the findings and conclusions of the Hearing Panel and the sanctions of Mr. Manookian were not arbitrary or capricious, and were supported by substantial and material evidence in light of the entire record.

It is so **ORDERED** this the 1st day of October, 2021.

**HONORABLE WILLIAM B. ACREE**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been delivered to the following at their respective addresses, this _____ day of _____, 2021:

| | |
|---|---|
| *– Attorney for Petitioner*<br>**Daniel A. Horwitz**<br>4016 Westlawn Dr.<br>Nashville, TN 37209<br>Tel: (615) 739-2888<br>*daniel.a.horwitz@gmail.com* | *– Attorneys for Respondent*<br>**A. Russell Willis**<br>**James W. Milam**<br>BOARD OF PROFESSIONAL RESPONSIBILITY<br>10 Cadillac Drive, Suite 220<br>Brentwood, TN 37207<br>Tel: (615) 361-7500<br>Fax: (615) 367-2480<br>*rwillis@tbpr.org*<br>*jmilam@tbpr.org* |

_____
**CLERK**

## RULE 58 CERTIFICATION

A Copy of this order has been served by U. S. Mail
upon all parties or their counsel named above.

Deputy Clerk and Master
Chancery Court

10/4/21
Date